IN THE UNITED STATES COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALISHA W., ON BEHALF OF J. W., § § | | |
| Plaintiffs, § | Civil Action No. 4:20-cv-488 | |
| vs. § § | | |
| KATY INDEPENDENT SCHOOL DISTRICT, § § | | |
| Defendant. § | | |

## PLAINTIFFS' ORIGINAL COMPLAINT

J. W. ("Student"), by and through his next friend and natural parent, Alisha W. (collectively "Plaintiffs"), file this *First Original Complaint* alleging that the Katy Independent School District ("KISD") violated the various rights of Student as more specifically pled herein. Plaintiffs reserve the right to re-plead if new claims and issues arise upon further development of the facts as permitted by law. In support thereof, Plaintiffs respectfully show this tribunal the following:

### I. INTRODUCTION & BRIEF REVIEW OF CASE

**1.** In the fall 2018, a 5th grade student at KISD incessantly verbally sexually harassed and twice sexually assaulted J.W.— a 2nd grade student with disabilities.

**2.** KISD failed to appropriately respond to the sexual harassment and sexual assaults. For example, KISD failed to complete a Title IX investigation, failed to take appropriate action to keep J.W. safe, failed to remediate the effects of the sexual harassment and assault on J.W., and failed to provide to J.W.'s mother information regarding the sexual assault and harassment.

**3.** As a result of KISD's acts and omissions, J.W. suffered injuries.

**4.** Accordingly, J.W., by his next friend and natural parent, Dr. Alisha W., brings forth claims pursuant to Title IX of the Education Amendments of 1972, *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, *Americans with Disabilities Act*, 42 U.S.C. §12131,

*et seq.*, 42 U.S.C. §1983 and 1988; and the Fourteenth Amendment. In addition, Dr. W. has derivative claims for expenses related to the care and treatment of J.W.

5.  For any and all of the foregoing, Plaintiffs request equitable, remedial, and compensatory damages for J.W. pursuant to the civil rights acts which include but are not limited to damages for past and future emotional anguish, compensatory services, reimbursement for various out-of-pocket expenses, costs of representation including attorneys' fees and related taxable and non-taxable costs, and other forms of equitable and compensatory relief that this Court may otherwise provide.

## II. JURISDICTION

6.  Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and 1343 because the matters in controversy arise under the laws of the United States. In addition, jurisdiction is conferred upon this Court pursuant to 20 U.S.C. §1681-1688, Title IX of the Education Amendments of 1972, et seq., and the federal regulations issued thereunder. Further, Plaintiffs have brought forth claims pursuant to the Fourteenth Amendment to the Constitution of the United States, 42 U.S.C. §1983. In addition, this Court has jurisdiction to award attorneys' fees and costs to the Plaintiffs pursuant to 42 U.S.C. § 2000d et seq. and 42 U.S.C. §1988.

## III. VENUE

7.  Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs' claims occurred in the Southern District of Texas, Houston Division.

## IV. PARTIES

8.  J.W. lives with his mother, Dr. Alisha W. at 2506 Monarch Terrace Drive; Katy, Texas 77494.

**9.** The Katy Independent School District is a school district organized under the laws of the State of Texas. At all times pertinent to this case, J.W. was a student at the Katy Independent School District. KISD can be served through its superintendent at 6301 South Stadium Lane; Katy, Texas 77494. However, Plaintiffs have reason to believe that the general counsel for Katy ISD, Justin Graham, will accept service by email at JustinRGraham@KATYISD.ORG.

### V. TITLE IX – Sex-Based Discrimination.

**A. Title IX - Law & Regulations**

**10.** Title IX provides, *inter alia*:

> *No person in the United States shall, on the basis of gender, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.*[1]

**11.** Title IX's purpose is to prevent bullying, harassment, sexual harassment, assault or sexual assault based upon sex, gender or gender stereotypes and to remedy the effects of discrimination based on sex, gender, or gender stereotypes.

**12.** Federal guidance explains that school personnel must understand their legal obligations to address harassment based upon sex, gender and gender stereotypes and that these individuals are in the best position to recognize and prevent such harassment, lessen harm to the victims, and, remedy the effects of the harassment.[2]

**13.** In *Davis v. Monroe County Board Of Education*,[3] the Supreme Court set forth the requisite elements of a Title IX violation by a school for student upon student sexual harassment: (1) the student victim must be member of a protected class and be bullied, harassed or assaulted because of their membership in that class (*e.g. based upon sex or gender*); the harassment be severe and

---

[1] *See* 20 U.S.C. sections 1681 through 1688.
[2] *See* 62 Fed. Reg. 12034 [Mar. 13, 1997]).
[3] *Davis v. Monroe County Board Of Education*, 526 U.S. 629 (1999).

*Plaintiffs' First Original Complaint*     3

pervasive such that the student victim experiences a deprivation of educational opportunity; (3) the school was on notice of the harassment; and (4) the school was *deliberately indifferent* to the harassment. In addition, the Supreme Court confirmed that a public-school district has a threshold duty to investigate alleged sexual harassment in a timely manner, a duty to prevent ongoing and future harassment of the student victim, and a duty to remedy the effects of past harassment.

**B.      KISD's Policies & Procedures**

14.     KISD's policies and procedures related to *Student Welfare* and keeping students free from Discrimination, Harassment & Retaliation address, inter alia, student-on-student sexual harassment and assault. The policies provide definitions of sexual harassment, reporting requirements after an allegation of sexual, and KISD's investigatory procedures.

15.     KISD's policies include specific examples of sexual harassment of a student that include "sexual advances; touching intimate body parts or coercing physical contact that is sexual in nature; jokes or conversations of a sexual nature; and other sexually motivated conduct, communications, or contact."

16.     In addition, allegations of sexual harassment are required to be directed to KISD's Title IX Coordinator—*whose contact information is purportedly located in an exhibit to the pertinent policies*—and the school is required to provide the family that person's contact information as well as actual notice of the family's procedural rights. KISD is required to complete an investigation in a timely manner (*generally less than 10 days*), develop a written report, file the written report with the KISD Title IX coordinator, and notify the victim's family of the outcome of the investigation. KISD is further required to promptly take appropriate interim actions prior to completion of its investigation "regardless of whether a criminal or regulatory investigation regarding the alleged conduct is pending."

**17.** To the extent a criminal or regulatory investigation is initiated, KISD is required to confer with the agency and to proceed with its investigation to the extent that it does not impede the criminal or regulatory investigation. To the extent the KISD is required to postpone its investigation so as not to impede the criminal or regulatory investigation, KISD must promptly resume its investigation after the agency completes evidence gathering.

**18.** KISD's investigation report must address whether the prohibited conduct occurred, and the student victim has the right to appeal this determination through KISD's grievance procedure and with the Office of Civil Rights of the U.S. Department of Education.

**19.** After a determination of prohibited conduct, KISD is required to promptly respond with appropriate disciplinary action, and KISD's policies provide a non-exhaustive list of potential corrective actions including, *inter alia*, provision of training and/or counseling to the victim, school-wide implementation of a comprehensive education program, and making follow-up inquiries to assess the effectiveness of corrective actions.

## VI. STATEMENT OF FACTS

Plaintiffs incorporate by reference all the below-related paragraphs with the same force and effect as if herein set forth.

**A. J.W.**

**20.** J.W.'s birthday is in 2009, and he is currently 10 years old and in 3rd grade at Randolph Elementary School ("Randolph") in KISD.

**21.** J.W. is an only child and resides with his mother, Dr. Alisha W.

**22.** J.W. enjoys swimming and playing with the family's cat, Oreo. J.W. loves Oreo very much. He has a fun sense of humor and enjoys conversations with adults and sharing jokes.

**23.** During a significant period of time that forms the basis of this Complaint, J.W. was a student at in KISD.

24. J.W. is also a student with a disability under the Individuals With Disabilities Education Act ("IDEA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). KISD determined his eligibility criteria as follows: Emotional Disturbance, Specific Learning Disability in written expression with conditions of dyslexia and dysgraphia, and Other Health Impairment ("OHI") based on diagnoses of Attention Deficit Hyperactivity Disorder ("ADHD"), Oppositional Defiant Disorder ("ODD"), and Disruptive Mood Dysregulation Disorder ("DMDD").

25. Due to J.W.'s disabilities, he may be more easily targeted for harassment based on sex as well as bullying and harassment based on his disability.

**B.     The Incident.**

26. Dr. W. enrolled J.W. in KISD, and J.W. began 2nd grade at Franz Elementary School ("Franz") in KISD on or about August 15, 2018. Although he was zoned to attend school at Wolman Elementary School ("Wolman") in KISD, he attended Franz due to his placement in the Adaptive Behavior ("AB") program, which was not offered at Wolman. KISD determined that J.W.'s instructional setting would be in a Self-Contained Regular Campus for more than 60% of the time.

27. On or about Friday, November 9, 2018, Assistant Principal ("AP") Michelle Dawkins notified Dr. W. that a male 5th grade student ("Student B") attempted to persuade J.W. to perform oral sex on him while riding the special education school bus (hereinafter the "Incident"). AP Dawkins explained that another student overheard Student B's coercive sexual advances and notified KISD administrators. She further explained that the Incident occurred in September 2018—*up to 2 months before AP Dawkins contacted Dr. W.*

28.     That weekend, Dr. W. asked J.W. about the Incident, and J.W. confirmed that he performed oral sex on Student B; specifically, J.W. explained that he "sucked his #### while on the school bus."

29.     J.W. told Dr. W. that Student B was 12 years old, and he had been pressuring J.W. for oral sex day since the first day the 2 students rode the school bus together.

30.     J.W. explained that he had been distressed by the constant sexual advances and coercion and wanted them to stop, so one day he asked Student B whether he would stop pressuring J.W. for oral sex if J.W. complied. Student B said *yes*.

31.     The following day while riding the special education school bus, J.W. and Student B were seated next to each other Student B next to the window and J.W. next to the aisle. Student B pulled down his pants, and the 2 students crouched behind the seat where J.W. placed his mouth on Student B's penis. Afterward, Student B pulled up his pants, and the 2 students sat back up in their seat.

32.     J.W. told Dr. W. that the very next day, Student B asked J.W. for oral sex again, which upset J.W. because he said that he only agreed to the sexual act to make Student B's constant sexual advances and coercion stop.

33.     In addition, Student B explained to J.W. that he knew about sexual acts, from watching pornographic videos.

34.     Thereafter, Student B and J.W. continued to ride the same special education bus, and Student B continued to incessantly sexually harass J.W., pressuring J.W. to perform oral sex again. At some point, J.W. acquiesced again and performed oral sex on Student B – Dr. W. learned of this second incident much later and only as the result of the discovery process during her administrative special education lawsuit.

35. At the time of the sexual harassment and assault, KISD failed to provide appropriate support and supervision, which may have prevented the sexual harassment and sexual assault as well as any future sexual harassment and sexual assaults.

36. On or about November 11, 2018, Dr. W. spoke with AP Dawkins several times to inquire about KISD's plan for responding to the Incident, and she requested a written incident report. AP Dawkins advised Dr. W. that the school had turned the matter over to KISD Police Department ("KISDPD"), that KISDPD was in charge of the investigation, and that the school could not proceed with any action or investigation until KISDPD completed its investigation. However, school administrators never reported the Incident to the Title IX coordinator. In fact, at that time and for almost a year thereafter, the KISD policies and procedures still included the name of the previous Title IX coordinator who was no longer employed by KISD. In addition, KISD never discussed with KISDPD whether any investigation by KISD would impede the criminal investigation of KISDPD—they simply turned the matter over to KISDPD and washed their hands of it.

37. On November 12, 2018, KISD administrators, KISD police officers, and the Department of Family and Protective Services ("DFPS") questioned J.W. at school. Despite the fact that Dr. W. specifically requested that she or another family member be present during any questioning of J.W. regarding the incident and KISD's agreement to same, Dr. W. was not notified nor permitted to be present.

38. On or about November 12, 2018, Dr. W. emailed J.W.'s teacher, Jennifer Onezine, to request email addresses of everyone with knowledge of the Incident. Ms. Onezine responded with email addresses for Principal Yvette Sylvan, AP Jennifer Cruz, AP Dawkins, and KISD Behavior Specialist Adrienne Thompson.

39. Thereafter, Dr. W. corresponded with Thompson via text messages and phone calls.

40. Despite requests by Dr. W., KISD refused to provide her any information regarding Student B. KISD would not provide Dr. W. information regarding Student B's age or the general locations in which he attended class and other activities within the school. Accordingly, Dr. W. had no way of knowing how often J.W. regularly came into contact with Student B.

41. In addition, Dr. W. asked KISD personnel whether Student B and J.W. had any contact with one another during the school day. In response, J.W.'s teacher told Dr. W. "we try to keep them separate." But KISD provided no further response.

42. In fact, Student B's classroom was adjacent to J.W.'s classroom; after the Incident, J.W. and Student B continued to go to lunch, recess, and social skills activities together.

43. And J.W. told Dr. W. that Student B continued to sexually harass him and would whisper to him and taunt him while they were in line and during at recess. J.W. explained that Student B said things to J.W. such as "[d]o you want to do what we did on the bus again?" Also, he told Dr. W. about areas on the playground where Student B would target J.W. because students were not supervised in those areas.

44. The Incident and continued sexual harassment were negatively affecting J.W., and he felt unsafe at school.

45. KISD continued to refuse to take appropriate actions in response to the Incident, including their refusal to remove or transfer Student B; KISD administrators simply repeated to Dr W. the same unacceptable excuse – that their inaction was because KISDPD was investigating the Incident. Accordingly, in an effort to keep her son safe, Dr. W. was forced to request that J.W. be transferred to another school within KISD.

**46.**     On or about December 3, 2018, J.W. began attending school at Diane Winborn Elementary School ("Winborn").

**47.**     At some point the criminal investigation was assigned to KISDPD Detective Michael Seiss.

**48.**     On or about November 13, 2018, Detective Seiss notified Dr. W. that J.W. needed to be present for a Forensic Interview at the Child Advocacy Center on November 26, 2018.

**49.**     On or about November 25, 2018, Dr. W. sent a text message to Detective Seiss stating "I have concerns because J.W. told me that the other boy is still asking him to 'do what they did on the bus.'" Detective Seiss responded by text that he would talk to her the following day at the scheduled Children's Assessment Forensic Interview.

**50.**     On November 26, 2018, J.W. had a Forensic Interview with the Children's Assessment Center.

**51.**     On or about December 4, 2018, Dr. W. emailed Principal Sylvan and requested documents related to the Incident. Principal Sylvan responded the next day and provided the KISDPD case number but refused to provide any of the requested documents, and she stated that KISD could not release such information until KISDPD completed its investigation.

**52.**     On or about January 21, 2019, Dr. W. called and spoke with Detective Seiss and requested copies of all documents related to the Incident, including incident reports and the case number. But Detective Seiss stated that he could not release the police report to her, because there were numerous juveniles involved, and he referred her to KISD attorney Sabrina Fernandez for assistance requesting the report.

**53.**     During that call, Dr. W. asked Detective Seiss whether the investigation included information from the bus driver and/or bus monitor and whether videotapes from the bus were reviewed. Detective Seiss advised that the school itself was responsible for that part of the

investigation and would conduct their own investigation. He further confirmed to Dr. W that the KISDPD criminal investigation was complete and thus the school could proceed with its investigation.

54. Detective Seiss later confirmed to Dr. W. that KISDPD's criminal investigation was completed on or about January 22, 2019, and he explained that he would contact KISD administration regarding completion of the criminal investigation so that KISD could *begin* their investigation. Based on Detective Seiss's statements, it was clear that KISD never conducted any sort of investigation of the incident.

55. On January 23, 2019, Dr. W. *again* requested in writing the police report from KISD. This time Dr. W. utilized and submitted online KISD's public information request form. Then on or about January 28, 2019, KISD sent a "10-day letter" to the Office of the Texas Attorney General ("AG") requesting a determination regarding whether KISD was required to produce to Dr. W. a copy of the KISDPD police report. Therein, KISD states that it received a written request from Dr. W. for the relevant police report on January 23, 2019. However, Dr. W. had repeatedly requested in writing from KISD such information beginning in November of 2018, so KISD's letter to the Attorney General was untimely.

56. Through its "10-day letter", KISD sought a determination from the AG that the information requested was excepted from disclosure pursuant to the Texas Family Code §261.201 "as part of a Katy ISD police investigation under chapter 261 of the Family Code." Section 261.201 of the Texas Family Code provides, in pertinent part, an exception for disclosure of documents in response to a request for "a report of alleged or suspected abuse or neglect made under this chapter and the identity of the person making the report" and "the files, reports, records, communications,

audiotapes, videotapes, and working papers used or developed in an investigation under this chapter or in providing services as a result of an investigation."

57. On or about March 6, 2019, Dr. W. emailed Principal Sylvan and requested a status update regarding KISD's investigation of the Incident, and she explained that KISDPD department had completed the criminal investigation a month before, but she had not received any information from KISD regarding the Incident. Therein, Dr. W. specifically requested incident reports.

58. Principal Sylvan responded by email the following day and, *again*, refused to provide to Dr. W. any documents related to the Incident—*despite the fact that Principal Sylvan previously advised Dr. W. that she could not produce these documents until KISDPD completed its investigation.* However, by this time, KISDPD had in fact completed its investigation, but KISD continued to refuse to provide Dr. W. requested information.

59. Principal Sylvan further explained that all information obtained by KISD regarding the incident had been submitted to Detective Seiss and any information regarding the outcome of the case would be communicated to Dr. W. by Detective Seiss. Principal Sylvan's explanation and the information Dr. W. received from Detective Seiss were wholly inconsistent.

60. And no one from KISD ever provided to Dr. W. any documents regarding the incident— no incident reports, no investigation reports, no proposed or implemented remedial actions— *nothing*. Essentially, the KISDPD and KISD administration were tossing Dr. W. between them and providing her inconsistent information and hoping that she would simply go away.

61. KISD's failures, the Incident, the sexual harassment, and KISD's inappropriate response to the Incident have had severe negative effects on J.W. He has regressed considerably at home and school, and has become very moody, disruptive, and argumentative. He also shared with Dr. W. that he cannot stop thinking about what happened. He has fears that the other boy will transfer

to his school. J.W. is now under the care of a private psychiatrist and sees a private therapist/counselor regularly.

62. After the Incident, J.W.'s toileting skills regressed considerably to the point that he had to wear a diaper at 9 years of age despite the fact that prior to the Incident he was fully toilet trained. In addition, J.W.'s behavior generally regressed and became more immature (*ex. thumb sucking)*, and he has had violent ideations, perseveration and fixation on the Incident, tantrums/outbursts, difficulty sleeping, overall restlessness, increased anxiety, severe functional constipation, increased aggressive behavior, and outright school refusal.

## VII. **TITLE IX**

63. Title IX of the Education Amendments of 1972 (Title IX), 86 Stat. 373, as amended, 20 U.S.C. § 1681 *et seq.*, ("Title IX") specifically notes that a public entity may be liable under Title IX for discrimination based upon gender or gender stereotypes. The claimant must be a member of a protected class; must be treated differently because of membership in that class; the Defendant entity must be on notice as to the allegations; be deliberately indifferent to those allegations and the victim must have experienced a deprivation of educational opportunities and/or other damages.

64. J.W. easily satisfies all these threshold requirements and seeks recovery accordingly.

65. Plaintiffs further contend that the failures by KISD to have effective policies, procedures, practices and customs in place to assure J.W. was not a victim of bullying, harassment, or assault based upon sex violated his rights pursuant to Title IX of the Education Amendments of 1972 (Title IX), 86 Stat. 373, as amended, 20 U.S.C. §1681 *et seq.*, upon which he now seeks recovery.

66. J.W. has a private cause of action against KISD for violation of the rules and regulations promulgated pursuant to Title IX.

67. Such failures by KISD caused injuries to J.W.

## VIII. CLAIMS RELATED TO THE REHABILITATION ACT OF 1973

68. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

69. KISD receives federal funds and thus follow the requisites of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

70. The implemented regulations of Section 504 require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled student's disabling condition needs, and fails to accommodate that child's disability and keep the student safe, it violates Section 504.

71. Plaintiffs assert KISD failed to provide the student a safe and non-hostile educational environment, and such failures together and separately contributed to violating J.W.'s rights pursuant to Section 504 and the federal rules and regulations promulgated pursuant thereto.

72. As such, J.W. has a private cause of action for violation of the regulations promulgated under Section 504 due to the acts and omissions by KISD.

73. In addition and in the alternative, KISD's failures constituted a gross deviation from professional standards of care.

74. In addition and in the alternative, J.W. was a victim of intentional discrimination by KISD.

75. In addition and in the alternative, J.W. was a victim of disparate impact under Section 504 due to the acts and omissions of KISD.

76. The acts and omissions of KISD specifically undermined and interfered with J.W.'s rights pursuant to Section 504; therefore, J.W. was a victim of discrimination based upon disability.

77. Such failures by KISD caused injuries to J.W.

### IX. CLAIMS RELATED TO THE AMERICANS WITH DISABILITIES ACT

78. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

79. In addition and in the alternative to the above, the facts as previously described demonstrate violations of Title II of the *Americans with Disabilities Act*, 42 U.S.C. §12131, *et seq*. ("ADA").

80. J.W. is a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2).

81. KISD is a "public entity" as defined in 42 U.S.C. §12131(1), and receives federal financial assistance so as to be covered by the mandate of the ADA.

82. KISD and its schools are facilities, and their operation constitutes a program and services for ADA purposes.

83. Specifically, and separate and apart from his Section 504 cause of action, J.W. alleges that KISD failed and refused to reasonably accommodate and modify services as to him, in violation of Title II of the ADA.

84. J.W. was a victim of discrimination based upon disability by the acts and omissions of KISD.

85. J.W. has a private cause of action against KISD for their failure to follow relevant regulations promulgated pursuant to the ADA.

86. Such failures by KISD caused injuries to J.W.

### X. UNCONSTITUTIONAL POLICIES, PROCEDURES, PRACTICES, & CUSTOMS

87. Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, above with the same force and effect as if herein set forth.

88. Plaintiffs contend that these failures of KISD to have policies, procedures, practices, and customs in place to protect J.W. violated his rights pursuant to the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

89. During the relevant time period contemplated by this cause of action, KISD had an actual policy, practice, and custom of conscious and deliberate indifference to federal law, federal and state administrative directives, and KISD policies and procedures in regard to the treatment of J.W., and such failures were a moving force in the injuries to J.W. for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

## XI. CLAIMS PURSUANT TO THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION

90. Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

91. The acts and omissions of KISD discriminated against J.W. when treating him in a disparate manner as compared to other students similarly situated, thereby violating his rights pursuant to the *Equal Protection Clause* of the Fourteenth Amendment, for which for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983 and 1988.

## XII. RATIFICATION

92. Plaintiffs incorporate by reference all the above-related paragraphs, as well as those below, with the same force and effect as if herein set forth.

93. KISD ratified the acts, omissions, and customs of KISD administrators, personnel, and staff.

94. KISD ratified the acts, omissions, and customs of the KISD Police Department personnel and staff.

95. KISD Police Department ratified the acts, omissions, and customs of their personnel and staff.

96. As a result, KISD is responsible for the acts and omissions of staff who were otherwise responsible for the safety of J.W.

### XIII. PROXIMATE CAUSE

97. Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

98. All of the foregoing acts and omissions of KISD, both separately and/or collectively, jointly and severally, whether in an official or individual capacity, constitute a direct and proximate cause of the injuries and damages set forth herein.

### XIV. SPOLIATION

99. Plaintiffs hereby require and demand that KISD preserve and maintain all evidence pertaining to any claim or defense related to the assault or other violations made the basis of this Complaint and request for due process or the damages resulting therefrom, including statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence regarding the incident or other violations set forth herein.

100. Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation interference rule—an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

101. In addition, pursuant to KISD's own policies and procedures, KISD is required to retain copies of allegations, investigation reports, and related records regarding any prohibited conduct

in accordance with KISD's records retention schedules, but for no less than the minimum amount of time required by law.

102. Regarding video footage of the Incident or of any part of the school bus at the time of the Incident, as forth in more detail herein above, KISD was on notice of its duty to preserve the video recording footage beginning on the day of the Incident. To the extent this video footage was destroyed, lost, or otherwise rendered unavailable for use in this lawsuit, Plaintiffs request an inference or presumption that the destruction or loss of same was completed because it was unfavorable to KISD's case.

103. In addition, KISD has not produced to Plaintiffs video recordings of the Incident.

## XV. **DAMAGES**

104. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

105. As a direct and proximate result of KISD's conduct, J.W. suffered injuries and damages, for which he is entitled to recover herein including but not limited to:

    a.    Loss of educational opportunities;

    b.    Physical pain in the past;

    c.    Medical expenses in the past;

    d.    Medical expenses in the future;

    e.    Mental anguish in the past;

    f.    Mental anguish in the future;

    g.    Mental health expenses in the past;

    h.    Mental health expenses in the future;

    i.    Physical impairment in the past;

  j.  Physical impairment in the future; and

  k.  Various out-of-pocket expenses incurred by his family due to the acts and omissions of KISD.

## XVI. PUNITIVE DAMAGES

**106.** Plaintiffs incorporate by reference all the above-related paragraphs, as well as those below, with the same force and effect as if herein set forth.

**107.** Plaintiffs reasonably believe the acts and omissions of KISD satisfy criteria for violation of civil rights and discrimination as contemplated by Section 1983 because the facts shock the conscience.

## XVII. ATTORNEYS' FEES

**108.** Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth herein.

**109.** It was necessary for Plaintiffs to retain the undersigned attorney to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorney fees and costs pursuant to 42 U.S.C. §1983 and 1988; Title IX; and 42 U.S.C. § 2000d *et seq*.

## XVIII. DEMAND FOR JURY TRIAL

**110.** Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## XIX. PRAYER

**111.** Plaintiffs pray for judgment against KISD in the manner and particulars noted above, and in an amount sufficient to fully compensate them for the elements of damages enumerated above, judgment for damages, recovery of attorneys' fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to Section 504 of the Rehabilitation Act of

1973, 29 U.S.C. §794, *Americans with Disabilities Act*, 42 U.S.C. §12131, *et seq.*, 42 U.S.C. §1983 and 1988; the Fourteenth Amendment, and Title IX and 42 U.S.C. § 2000d *et seq*.,; together with pre- and post-judgment interest, and court costs expended herein, as well as the equitable issues noted above; and for such other relief as this Court in equity, deems just and proper and for such other relief as this Court may deem just and proper in law or in equity.

Respectfully Submitted,

_____
Holly Griffith Terrell, *attorney-in-charge*
State Bar No. 24050691
Federal ID No. 1034278
Law Office of Holly Terrell, PLLC
11601 Shadow Creek Parkway
Suite 111-136
Pearland, Texas 77584
281.715.0900
281.377.4413 (facsimile)
*hollyterrelllaw@gmail.com*
**Attorney for Plaintiffs**